UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JEREMY LOUIS BARNEY, | : | |
| Plaintiff, | : | |
| | : | Civil No. 3:17-cv-685 (AWT) |
| v. | : | |
| | : | |
| COMMISSIONER SEMPLE, et al., | : | |
| Defendants. | : | |

INITIAL REVIEW ORDER

The plaintiff, Jeremy Louis Barney, who is currently incarcerated at Osborn Correctional Institution in Somers, Connecticut, has filed a complaint pro se, pursuant to 42 U.S.C. § 1983. The plaintiff names as defendants Commissioners Semple and Arnone, Deputy Commissioners Cepelak and Dzurenda, Wardens Maldonado and Chapdelaine, Fire Safety Officer Gero, Plant Facility Engineer Kevin Roy, Director Steven Link, Rich Hardy, Ward, Mario Costa, Correctional Officers Dinino and Jordan, GMOs Goodwin, Trap, Martin, Sullivan, Bassette and Bell, Governor Dannel Malloy, Analyst Rebecca Cutler, DEEP Commissioner Daniel Esty and President Collin Provost. The plaintiff alleges that the defendants have caused him to be subjected to

unconstitutional conditions of confinement.  The complaint was received by the court on April 25, 2017.  The plaintiff's motion to proceed in forma pauperis was denied on May 5, 2017, and he tendered the filing fee on May 22, 2017.

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.  In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "'A document filed pro se is to be liberally construed and a pro se

2

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Boykin v. KeyCorp., 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

I.   Factual Allegations

The plaintiff was housed in the Q-building at Osborn Correctional Institution from November 2011 until September 7, 2016. During that time, he was exposed to friable asbestos, methane gas, black and yellow mold, lead paint, and high levels of polychlorinated biphenyl ("PCB"). The drinking water contained PCBs, tin or lead, black sludge, asbestos and other contaminants. There were no sprinklers in these housing units and the cell doors could not be automatically unlocked. Ventilation was poor.

On December 7 and 11, 2016, defendants Dinino and Jordan appeared on the NBC news program and stated that the Q-building was closing because of unsafe conditions including the presence of PCBs and asbestos. They showed copies of test results documenting these conditions. On December 8, 2016, a newspaper reported that the governor was closing Q-building because of a reduction in crime. In the same article, the president of the Department of Correction employee union stated that the union

had raised concerns about the conditions in the Q-building housing units for years. Testing, revealing unsafe levels of hazardous materials, has been conducted in and around the Q buildings since 2011.

The plaintiff attaches to his complaint a memo to Rebecca Cutler, dated December 19, 2011, which reported on PCB testing of exterior caulk and glazing at Q-building. In December 2012, the Department of Energy and Environmental Protection reported that a company had been retained to test interior and exterior caulk for PCBs. Defendants Cepelak, Dzurenda, Chapdelaine, Link and Roy were copied on the memo. In October 2016, workers wearing full-hooded suits took soil samples at Osborn. Also in 2016, Commissioner Semple indicated that he would prefer to close Q-building because of infrastructure issues but continued to house inmates there.

Maintenance worker defendants Trap, Costa, Sullivan, Martin, Bassette and Bell drilled holes in sewage pipes to facilitate clog removal. The holes, which were in violation of code requirements, released methane gas into the housing units all day. Maintenance workers also installed tarps under skylights in Q-building to catch falling glass and leaking water. Defendant Fire Safety Officer Gero failed to report the

4

holes or any of the other fire hazards.

Defendant Roy signed testing and monitoring reports on water quality even though he was not certified to do so. The plaintiff describes the drinking water as cloudy and brown with a "funny" smell and bad taste. He alleges that two inmates contracted H-pylori from the water in 2016, and another inmate was rushed to the hospital where PCBs were found in his liver. Defendants Maldonado and Hardy were aware of the conditions but continued to house inmates in Q-building.

II. Analysis

The plaintiff contends that the defendants were aware of the hazardous conditions but caused him to be exposed to those conditions for five years. He seeks damages as well as declaratory and injunctive relief. To state an Eighth Amendment claim for unconstitutional conditions of confinement, an inmate must allege facts demonstrating failure of prison officials to provide for the inmate's "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." DeShaney v. Winnebago Dep't of Soc. Servs., 489 U.S. 189, 200 (1989).

An inmate may prevail on an Eighth Amendment claim based on unconstitutional conditions of confinement "only where he proves

both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the official acted, or omitted to act with a 'sufficiently culpable state of mind,' meaning with a 'deliberate indifference to inmate health or safety.'" Phelps v. Kapnolas, 308 F.3d 180, 185 (3d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A condition is objectively serious if it "'pose[s] an unreasonable risk of serious damage to [a prisoner's] future health.'" Id. (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)). Thus, the "objective component relates to the seriousness of the injury." Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994). To meet the subjective component, a plaintiff must allege that prison officials knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and … dr[e]w that inference." Id. at 185-86. An inmate may state an Eighth Amendment claim based on allegations that prison officials, with deliberate indifference, exposed him to an unsafe condition that poses an unreasonable risk of serious harm to his future health. Helling v. McKinney, 509 U.S. 23, 34-35 (1993).

6

The plaintiff alleges that the conditions in Q-building at Osborn, including high PCB levels; exposure to friable asbestos, methane gas and black and yellow mold; unsafe water; poor building infrastructure; and fire hazards rise to the level of a constitutional violation. He alleges that Commissioner Semple acknowledged some of these conditions but permitted inmates to remain in Q-building. He also alleges that other defendants were aware of or created these conditions. Although the plaintiff does not allege that he suffered any harm from exposure to these conditions, he alleges that other inmates contracted H-pylori from the water and suffered a harmful effect with respect to their kidneys and liver. The plaintiff need not wait until he suffers serious harm to challenge dangerous conditions of confinement. See Helling, 509 U.S. at 33 ("We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery."). The court concludes that the alleged conditions are sufficient to support a plausible claim for unconstitutional conditions of confinement.

III. Conclusion

The court enters the following orders:

(1) As the plaintiff paid the filing fee to commence this

7

action, he is directed to effect service of the complaint on the defendants in their individual and official capacities pursuant to Federal Rule of Civil Procedure 4, and to file returns of service demonstrating that he has complied with this order.

(2) The Clerk shall send a courtesy copy of the Complaint and this order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(3) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(4) The plaintiff shall utilize the Prisoner Efiling Program when filing any document with the court.

It is so ordered.

Signed this 31st day of May 2017 at Hartford, Connecticut.

                                                     /s/AWT
                                            Alvin W. Thompson
                                     United States District Judge